1

CENTER FOR DISABILITY ACCESS
Raymond Ballister Jr., Esq., SBN 111282
Russell Handy, Esq., SBN 195058
Amanda Seabock, Esq., SBN 289900
Zachary Best, Esq., SBN 166035
Mail: 8033 Linda Vista Road, Suite 200
San Diego, CA 92111
(858) 375-7385; (888) 422-5191 fax
amandas@potterhandy.com

2

3

4

5

6

7    Attorneys for Plaintiff

8

9            UNITED STATES DISTRICT COURT
             NORTHERN DISTRICT OF CALIFORNIA

10

11

| | |
|---|---|
| **Orlando Garcia,** | **Case No**. 3:21-cv-01275-JD |
|    Plaintiff, | **UNLIMITED CIVIL CASE** |
|    v. | **First Amended Complaint For Damages And Injunctive Relief For Violations Of:** Americans With Disabilities Act; Unruh Civil Rights Act |
| **KHP III SF Sutter LLC,** a Delaware Limited Liability Company; | |
| **Kimpton Hotel & Restaurant Group, LLC,** a Delaware Limited Liability Company; | |
|    Defendants | |

12

13

14

15

16

17

18

19

20

21

22    Plaintiff Orlando Garcia complains of KHP III SF Sutter LLC, a

23 Delaware Limited Liability Company; Kimpton Hotel & Restaurant Group,

24 LLC, a Delaware Limited Liability Company; ("Defendants"), and alleges as

25 follows:

26    **PARTIES:**

27    1. Plaintiff is a California resident with physical disabilities. He is

28 substantially limited in his ability to walk. He suffers from cerebral palsy. He

1

1    has the use of only one arm. He uses a wheelchair, walker, or cane for mobility.

2        2.   Defendant KHP III SF Sutter LLC, a Delaware Limited Liability

3    Company, owns the Kimpton Buchanan Hotel located at 1800 Sutter St., San

4    Francisco, California, currently and at all times relevant to this complaint.

5    Defendant Kimpton Hotel & Restaurant Group, LLC, a Delaware Limited

6    Liability Company, operates the hotel currently and at all times relevant to this

7    complaint.

8        3.   Plaintiff does not know the true names of Defendants, their business

9    capacities, their ownership connection to the property and business, or their

10   relative responsibilities in causing the access violations herein complained of,

11   and alleges a joint venture and common enterprise by all such Defendants.

12   Plaintiff is informed and believes that each of the Defendants herein, is

13   responsible in some capacity for the events herein alleged, or is a necessary

14   party for obtaining appropriate relief. Plaintiff will seek leave to amend when

15   the true names, capacities, connections, and responsibilities of the Defendants

16   are ascertained.

17   **JURISDICTION:**

18       4.   The Court has subject matter jurisdiction over the action pursuant to 28

19   U.S.C. § 1331 and § 1343(a)(3) & (a)(4) for violations of the Americans with

20   Disabilities Act of 1990, 42 U.S.C. § 12101, et seq.

21       5.   Pursuant to supplemental jurisdiction, an attendant and related cause

22   of action, arising from the same nucleus of operative facts and arising out of

23   the same transactions, is also brought under California's Unruh Civil Rights

24   Act, which act expressly incorporates the Americans with Disabilities Act.

25       6.   Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) and is

26   founded on the fact that the real property which is the subject of this action is

27   located in this district and that Plaintiff's cause of action arose in this district.

28

First Amended Complaint

**PRELIMINARY STATEMENT**

7.  This is a lawsuit challenging the reservation policies and practices of a place of lodging. Plaintiff does not know if any physical or architectural barriers exist at the hotel and, therefore, is not claiming that that the hotel has violated any construction-related accessibility standard. Instead, this is about the lack of information provided on the hotel's reservation website that would permit plaintiff to determine if there are rooms that would work for him.

8.  After decades of research and findings, Congress found that there was a "serious and pervasive social problem" in America: the "discriminatory effects" of communication barriers to persons with disability. The data was clear and embarrassing. Persons with disabilities were unable to "fully participate in all aspects of society," occupying "an inferior status in our society," often for no other reason than businesses, including hotels and motels, failed to provide information to disabled travelers. Thus, Congress decided "to invoke the sweep of congressional authority" and issue a "national mandate for the elimination of discrimination against individuals with disabilities," and to finally ensure that persons with disabilities have "equality of opportunity, full participation, independent living" and self-sufficiency.

9.  As part of that effort, Congress passed detailed and comprehensive regulations about the design of hotels and motels. But, as importantly, Congress recognized that the physical accessibility of a hotel or motel means little if the 61 million adults living in America with disabilities are unable to determine which hotels/motels are accessible and to reserve them. Thus, there is a legal mandate to provide a certain level of information to disabled travelers.

10.  But despite the rules and regulations regarding reservation procedures, a 2019 industry article noted that: "the hospitality sector has largely overlooked the importance of promoting accessible features to travelers."

3

First Amended Complaint

11. These issues are of paramount important. Persons with severe disabilities have modified their own residences to accommodate their unique needs and to ameliorate their physical limitations. But persons with disabilities are never more vulnerable than when leaving their own residences and having to travel and stay at unknown places of lodging. They must be able to ascertain whether those places work for them.

**FACTUAL ALLEGATIONS:**

12. Plaintiff planned on making a trip in August of 2021 to the San Francisco, California, area.

13. He chose the Kimpton Buchanan Hotel located at 1800 Sutter St., San Francisco, California because this hotel was at a desirable price and location.

14. Due to Plaintiff's condition, he is unable to, or seriously challenged in his ability to, stand, ambulate, reach objects mounted at heights above his shoulders, transfer from his chair to other equipment, and maneuver around fixed objects.

15. Thus, Plaintiff needs an accessible guestroom and he needs to be given information about accessible features in hotel rooms so that he can confidently book those rooms and travel independently and safely.

16. On January 31, 2021, while sitting bodily in California, Plaintiff went to the Kimpton Buchanan Hotel reservation website at https://www.thebuchananhotel.com/ seeking to book an accessible room at the location.

17. This website reservation system is owned and operated by the Defendants and permits guests to book rooms at Kimpton Buchanan Hotel.

18. Plaintiff found that there was insufficient information about the accessible features in the "accessible rooms" at the Hotel to permit him to assess independently whether a given hotel room would work for him.

First Amended Complaint

1    19. For example, Plaintiff needs a mirror mounted at a compliant height in
2    the bathroom so he can see himself. There is no mention whether the mirror is
3    mounted at the correct height. This leaves Plaintiff wondering if he can use the
4    mirror.

5    20. As another example, Plaintiff cannot transfer from his wheelchair to a
6    toilet unless there are grab bars at the toilet to facilitate that transfer. But the
7    Hotel reservation website does not provide any information about the
8    existence of grab bars for the accessible guestroom toilets. This is critical
9    information for the plaintiff.

10   21. As another example, Plaintiff has had tremendous difficulty with using
11   lavatory sinks in the past because sinks were cabinet style sinks or had low
12   hanging aprons that did not provide knee clearance for a wheelchair user to
13   pull up and under or, alternatively, where the plumbing underneath the sink
14   was not wrapped with insulation to protect against burning contact to his
15   knees. Here, the Hotel reservation website provides no information about the
16   accessibility of the sinks in the accessible guestroom.

17   22. As another example, Plaintiff needs doorways that are at least 32 inches
18   wide so he can get his wheelchair through. Without this feature, Plaintiff risks
19   getting stuck in a doorway, or being prevented from passing through the
20   doorway at all. The website does not mention that the hotel room has this
21   feature.

22   23. As another example, a desk or table is an important part of a hotel room.
23   People eat and work at tables. However, if the table does not have compliant
24   knee space underneath it, a person in a wheelchair cannot pull their chair
25   under the table, rendering it unusable. A single sentence "The table provides
26   knee clearance of at least 27 inches high for at least 8 inches in depth" would
27   ensure that persons in wheelchairs can assess if the table works for them. Here,
28   the hotel says nothing.

First Amended Complaint

24. As another example, Plaintiff often uses a type of wheelchair that he cannot get wet when he showers. He needs to roll into the shower enclosure and then transfer to an in-shower seat and push his chair out of the path of the water. But there is no information on the Hotel reservation website about whether the roll-in shower has an in-shower seat or any grab bars mounted above the seat for transfer (required by the ADA). So, Plaintiff can assume he can roll into that shower but has no other information about whether he can use this shower.

25. Plaintiff does not need an exhaustive list of accessibility features. Plaintiff does not need an accessibility survey to determine of a room works for him. Plaintiff, like the vast majority of wheelchair users, simply needs a handful of features to be identified and described with a modest level of detail:

- For the doors, Plaintiff simply needs to know if he can get into the hotel room and into the bathroom. This is a problem that has created tremendous problems for the Plaintiff in the past. A simple statement that the hotel room entrance and interior doors provide at least 32 inches of clearance is enough to provide Plaintiff this critical piece of information about whether he can fit his wheelchair into the hotel rooms.

- For the beds themselves, the only thing Plaintiff needs to know (and the only thing regulated by the ADA Standards) is whether he can actually get to (and into) the bed, i.e., that there is at least 30 inches width on the side of the bed so his wheelchair can get up next to the bed for transfer. This is critical information because Plaintiff cannot walk and needs to pull his wheelchair alongside the bed.

- For the desk where Plaintiff will eat and work, Plaintiff simply needs to know that it has sufficient knee and toe clearance so that he can use it. A simple statement like "the desk provides knee and toe clearance that

First Amended Complaint

is at least 27 inches high, 30 inches wide, and runs at least 17 inches deep" is more than sufficient. Because Plaintiff is confined to a wheelchair, he needs to know this information to determine if the desk is accessible to and useable by him.

- For the restroom toilet, Plaintiff only needs to know two things that determine if he can transfer to and use the toilet; (1) that the toilet seat height is between 17-19 inches (as required by the ADA Standards) and (2) that it has the two required grab bars to facilitate transfer.

- For the restroom sink, the Plaintiff two things that will determine whether he can use the sink from his wheelchair: (1) can he safely get his knees under the toilet? To wit: does the sink provide the knee clearance (27 inches high, 30 inches wide, 17 inches deep) and is any plumbing under the sink wrapped with insulation to protect against burning contact? The second thing is whether the lavatory mirror is mounted at a lowered height so that wheelchair users can sue it. A simple statement like: "the lavatory sink provides knee clearance of at least 30 inches wide, 27 inches tall and 17 inches deep, all of the under-sink plumbing is wrapped, and the lowest reflective edge of the mirror is no more than 40 inches high" would suffice.

- Finally, for the shower, Plaintiff needs to know only a handful of things: (1) what type of shower it is (transfer, standard roll-in, or alternate roll-in), (2) whether it has an in-shower seat; (3) that there are grab bars mounted on the walls; (4) that there is a detachable hand-held shower wand for washing himself and (5) that the wall mounted accessories and equipment are all within 48 inches height.

26. This small list of items are the bare necessities that Plaintiff must know to make an independent assessment of whether the "accessible" hotel room works for him. These things comprise the basics of what information is

First Amended Complaint

1   reasonably necessary for Plaintiff (or any wheelchair user) to assess
2   independently whether a given hotel or guest room meets his or her
3   accessibility needs.

4      27. Other accessibility requirements such as slopes of surfaces, whether the
5   hand-held shower wand has a non-positive shut off valve, the temperature
6   regulator, the tensile strength and rotational design of grab bars, and so many
7   more minute and technical requirements under the ADA are beyond what is a
8   reasonable level of detail and Plaintiff does not expect or demand that such
9   information is provided.

10     28. But because the Defendants have failed to identify and describe the core
11  accessibility features in enough detail to reasonably permit individuals with
12  disabilities to assess independently whether a given hotel or guest room meets
13  his accessibility needs, the Defendants fail to comply with its ADA obligations
14  and the result is that the Plaintiff is unable to engage in an online booking of
15  the hotel room with any confidence or knowledge about whether the room will
16  actually work for him due to his disability.

17     29. This lack of information created difficulty for the Plaintiff and the idea
18  of trying to book this room -- essentially ignorant about its accessibility --
19  caused difficulty and discomfort for the Plaintiff and deterred him from
20  booking a room at the Hotel.

21     30. As a veteran ADA tester, Plaintiff is aware that he needs to return to the
22  hotel website and to patronize the hotel in order to have standing to see that
23  the hotel comes into compliance with the ADA's mandate regarding its
24  reservation policies. Thus, plaintiff will use the hotel's website reservation
25  system to book a room and travel to the hotel when it has been represented to
26  him that the hotel's website reservation system is accessible. Plaintiff will be
27  discriminated against again, i.e., be denied his lawfully entitled access, unless
28  and until the defendant is complies with the law.

First Amended Complaint

31. Plaintiff would like to patronize this hotel but is deterred from doing so because of the lack of detailed information through the hotel's reservation system.

32. Plaintiff will travel to the area on a regular and ongoing basis and will patronize this Hotel once it has been represented to him that the Defendant has changed its policies to comply with the law and to determine if the Hotel is physically accessible as well as complying with required reservation procedures. Plaintiff will, therefore, be discriminated against again, i.e., be denied his lawfully entitled access, unless and until the Defendant is forced to comply with the law.

33. Plaintiff has reason and motivation to use the Defendant's Hotel reservation system and to stay at the Defendant's Hotel in the future. Among his reasons and motivations are to assess these policies and facilities for compliance with the ADA and to see his lawsuit through to successful conclusion that will redound to the benefit of himself and all other similarly situated. Thus, Plaintiff routinely revisits and uses the facilities and accommodations of places he has sued to confirm compliance and to enjoy standing to effectuate the relief promised by the ADA.

**I. FIRST CAUSE OF ACTION: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990** (On behalf of Plaintiff and against all Defendants.) (42 U.S.C. section 12101, et seq.)

34. Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

35. Under the ADA, it is an act of discrimination to fail to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to afford goods, services, facilities, privileges advantages or accommodations to person with disabilities unless the entity can demonstrate

First Amended Complaint

1    that taking such steps would fundamentally alter the nature of the those goods,

2    services, facilities, privileges advantages or accommodations. See 42 U.S.C. §

3    12182(B)(2)(A)(ii).

4        36. Specifically, with respect to reservations by places of lodging, a

5    defendant must ensure that its reservation system, including reservations

6    made by "any means," including by third parties, shall:

7                    a. Ensure that individuals with disabilities can make

8                       reservations for accessible guest rooms during the same

9                       hours and in the same manner as individuals who do not

10                      need accessible rooms;

11                   b. Identify and describe accessible features in the hotels and

12                      guest rooms offered through its reservations service in

13                      enough detail to reasonably permit individuals with

14                      disabilities to assess independently whether a given hotel

15                      or guest room meets his or her accessibility needs; and

16                   c. Reserve, upon request, accessible guest rooms or specific

17                      types of guest rooms and ensure that the guest rooms

18                      requested are blocked and removed from all reservations

19                      systems.

20           *See* 28 C.F.R. § 36.302(e).

21        37. Here, the defendant failed to modify its reservation policies and

22    procedures to ensure that it identified and described accessible features in the

23    hotels and guest rooms in enough detail to reasonably permit individuals with

24    disabilities to assess independently whether a given hotel or guest room meets

25    his or her accessibility needs and failed to ensure that individuals with

26    disabilities can make reservations for accessible guest rooms during the same

27    hours and in the same manner as individuals who do not need accessible

28    rooms.

10

First Amended Complaint

1

2  **II. SECOND CAUSE OF ACTION: VIOLATION OF THE UNRUH CIVIL**

3  **RIGHTS ACT** (On behalf of Plaintiff and against all Defendants.) (Cal. Civ.

4  Code § 51-53.)

5      38. Plaintiff repleads and incorporates by reference, as if fully set forth

6  again herein, the allegations contained in all prior paragraphs of this

7  complaint.  The Unruh Civil Rights Act ("Unruh Act") guarantees, inter alia,

8  that persons with disabilities are entitled to full and equal accommodations,

9  advantages, facilities, privileges, or services in all business establishment of

10  every kind whatsoever within the jurisdiction of the State of California.  Cal.

11  Civ. Code §51(b).

12      39. The Unruh Act provides that a violation of the ADA is a violation of the

13  Unruh Act.  Cal. Civ. Code, § 51(f).

14      40. Defendants' acts and omissions, as herein alleged, have violated the

15  Unruh Act by, inter alia, failing to comply with the ADA with respect to its

16  reservation policies and practices.

17      41. Because the violation of the Unruh Civil Rights Act resulted in difficulty

18  and discomfort for the plaintiff, the defendants are also each responsible for

19  statutory damages, i.e., a civil penalty. *See* Civ. Code § 52(a).

20

21      **PRAYER**:

22      Wherefore, Plaintiff prays that this Court award damages and provide

23  relief as follows:

24      1. For injunctive relief, compelling Defendants to comply with the

25  Americans with Disabilities Act and the Unruh Civil Rights Act. Note: the

26  plaintiff is not invoking section 55 of the California Civil Code and is not

27  seeking injunctive relief under the Disabled Persons Act at all.

28

First Amended Complaint

1      2. Damages under the Unruh Civil Rights Act, which provides for actual

2   damages and a statutory minimum of $4,000 for each offense.

3      3. Reasonable attorney fees, litigation expenses and costs of suit, pursuant

4   to 42 U.S.C. § 12205; and Cal. Civ. Code § 52(a).

5   4. For equitable nominal damages for violation of civil rights. See

6      *Uzuegbunam v. Preczewski*, --- U.S. ---, 2021 WL 850106 (U.S. Mar. 8,

7      2021) and any other equitable relief the Court finds appropriate.

8

9   Dated: May 7, 2021                    CENTER FOR DISABILTY ACCESS

10

11                                   By:    //s// Russell Handy

12                                   Russell Handy, Esq.

13                                   Attorneys for Plaintiff

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

First Amended Complaint